**LAWSON et al. v. D. H. HOLMES CO., Limited.**

**No. 17461.**

Court of Appeal of Louisiana. Orleans.

Feb. 10, 1941.

Rehearing Denied March 10, 1941.

Morrison, Morrison & Boggs, of New Orleans, for appellants.

Rosen, Kammer, Wolff & Farrar, of New Orleans, for appellee.

McCALEB, Judge.

The plaintiffs, Arthur Lawson, George Lawson, Mrs. William Fournier, Mrs. B. J. Gill, Mrs. J. H. White and Mrs. A. H. Jelks, are the surviving major children of Mrs. George Lawson, who died on February 27, 1939, as a consequence of a fall she sustained on February 6, 1939, while she was walking out of the Dauphine Street exit of the department store owned and operated by D. H. Holmes Company, Ltd., in the City of New Orleans. They have brought this suit for damages for the death of their mother charging that the fall she suffered, which subsequently caused her death, is attributable to the fault of the defendant, D. H. Holmes Company, Ltd., in not providing for its patrons a reasonably safe entrance to and exit from its store on Dauphine Street. They specifically allege that the Dauphine Street store entrance and exit, unlike the principal entrance on Canal Street and unlike another entrance on Bourbon Street, consists of a step approximately 6 inches from the sidewalk which is covered with an iron slab; that the iron slab, because of its constant use over a period of many years, has become badly worn, slippery, hazardous and dangerous; that, on the day of the accident, it had been raining and the step and vestibule leading into the store were more slippery than usual and that their mother, while emerging from within the store, slipped and fell as a result of its unsafe and hazardous condition.

The defendant denies any and all responsibility to the plaintiffs for the death of their mother and sets forth that the Dauphine Street combined entrance and exit to its store is of sound construction and that the step, which is covered with an iron plate, is not hazardous or unsafe. Alternatively, it avers that, if the court should find that it was at fault in any particular, then Mrs. Lawson was guilty of contributory negligence barring plaintiffs' recovery.

After a trial in the district court on the foregoing issues, there was judgment in favor of the defendant and plaintiffs' suit was dismissed. They have appealed from the adverse decision.

There is no serious dispute concerning the facts of the case, which we find to be as follows: The accident occurred at about one p. m. on February 6, 1939, as Mrs. Lawson, the deceased, accompanied by her daughter, Mrs. Fournier, one of the plaintiffs herein, was leaving the D. H. Holmes department store by way of the Dauphine Street exit. In order to do so, she was required to pass through a revolving door and walk over a tile vestibule measuring approximately six feet square onto an iron plated slab fourteen inches

**165**

wide adjoining the sidewalk which was about six inches below it. As Mrs. Lawson attempted to step down from the iron slap onto the sidewalk, she either slipped or stumbled and fell and, as a result, her leg was broken.

There were no eyewitnesses to the accident except Mrs. Fournier, who states that her mother was walking ahead of her; that she was holding her mother's arm and that, as her mother stepped from the iron slab to the sidewalk, she felt her slip and saw her fall. It is further shown that, on the day of the accident, it had been raining and that the entrance vestibule to the store was damp and wet.

In an attempt to establish a case of negligence against the defendant, the plaintiffs called as a witness on their behalf Mr. Walter Cook Keenan, Jr., an architect of the City of New Orleans. Mr. Keenan describes the conditions prevailing at the scene of the accident in the following manner: "Beginning at the sidewalk, the step and platform is formed by a castiron tread approximately 6 inches above the sidewalk, approximately 14 inches wide, which is scored, the scorings of which are completely worn through in places, the platform then being formed of tile, the border of which is glazed tile. The slope of the platform is 2 inches, approximately, in 4 feet, or a 4 per cent slope. The slope of the castiron tread is almost a half-inch in 14 inches, which would figure to be approximately an 8 per cent slope."

The witness expresses the opinion that the passageway is not constructed properly and that this type of entrance is not used in modern buildings. On cross-examination, however, he admits that the construction is not unusual and that similar iron treads are used for step coverings in many of the buildings in the City of New Orleans. And, when asked to explain his reason for stating that the entrance was incorrectly constructed, he replied: "What I meant to bring out was that that type of entrance design, embodying the use of a step of any material, would not be used in a modern building".

Mr. Keenan further says that the iron slab covering the step is badly worn through constant use by patrons of the store over a long period of years and he is of the opinion that, due to the worn condition of the slab, it is now hazardous and unsafe to walk upon in wet weather.

The evidence of the defendant is that this vestibule has been in use for many years since the erection of the department store; that thousands of people walk over it daily; that there has never been a complaint with respect to its condition and that no accident has ever before occurred.

■ Assuming that Mrs. Lawson slipped on the iron slab situated at the entrance to the store (an assumption most favorable to the plaintiffs since the question as to whether she slipped or stumbled is left in considerable doubt by the evidence), we have no hesitancy in concluding that the District Judge was correct in holding that the defendant was without fault and therefore is not responsible for the unfortunate accident. The well established jurisprudence of this State, with respect to the duty owed by a storekeeper to his patrons, is that he is not an insurer of their safety. He need not keep his floors and passageways in perfect condition but must exercise only ordinary care and prudence to keep them in reasonably safe condition for his customers. See Bartell v. Serio, La.App., 180 So. 460; Greeves v. S. H. Kress & Co., La.App., 198 So. 171; Farrow v. John R. Thompson Co., 18 La.App. 404, 137 So. 604; and Bell v. Feibleman & Co., La.App., 164 So. 273.

■ The paramount question in the case, therefore, is whether the passageway provided by the defendant for the use of its patrons was unsafe or dangerous. We think that this question is fully answered by a casual examination of the photograph of the Dauphine Street entrance to defendant's store which has been offered in evidence. This photograph discloses that the passageway is of a sound and ordinary type of construction which one would expect to find in stores and buildings and there is nothing about its appearance which would lead any reasonable person to believe that it would be dangerous or unsafe to walk upon. It is true that the picture reveals that the scoring of the iron slab covering the step bears evidence of wear, as would naturally be an expected consequence in view of the fact that it has long been subjected to constant use. We find, however, that its condition is sound and that its utility has not been impaired and we are unable to agree with the opinion of plaintiffs' expert, Mr. Keenan, that the slab is badly worn or that it is dangerous to walk upon. It is

also apt to remark that Mr. Keenan's opinion is not entitled to greater weight (nor is it to be regarded as more expert) than any lay witness in the case for anyone who sees the slab and walks over it is fully able to judge its condition.

The defendant's testimony shows that thousands of people walk over this slab each day; that they have been doing so for many years; that there have been no complaints and that no other accident has ever occurred. This, to our minds, is a strong circumstance which must be considered by us in determining the condition of the step. See Greeves v. S. H. Kress & Co., supra. Then, too, it is shown that there is nothing uncommon or exceptional about the use of an iron slab over a step to protect it and that the steps of many buildings situated in New Orleans are provided with similar covering.

The accident, which occurred in broad daylight, is one which can and does frequently happen without the slightest fault on the part of anyone. The fact that it had been raining and that the vestibule was wet undoubtedly caused the passageway to be slippery but this, of itself, cannot be plausibly advanced by plaintiffs as an argument to hold the defendant liable for their mother's death. On the contrary, Mrs. Lawson knew that it was raining and she is to be charged with knowledge of the fact that one is apt to slip upon any wet surface. On this point, we find ourselves in absolute accord with the views expressed by the Supreme Court of Ohio in S. S. Kresge Co. v. Fader, 116 Ohio St. 718, 158 N.E. 174, 175, 58 A.L.R. 132, where it said:

"Owners or lessees of stores, office buildings, banks, hotels, theaters, or other buildings where the public is invited to come on business or pleasure, are not insurers against all forms of accidents that may happen to any who come. Everybody knows that the hallways between the outside doors of such buildings and the elevators or business counters inside the building during a continued rainstorm are tracked all over by the wet feet of people coming from the wet sidewalks, and are thereby rendered more slippery than they otherwise would be. The same thing is true in the hallways of all post offices. It is not the duty of persons in control of such buildings to keep a large force of moppers to mop up the rain as fast as it falls or blows in, or is carried in by wet feet or clothing or umbrellas, for several very good reasons, all so obvious that it is wholly unnecessary to mention them here in detail.

"It should be borne in mind that this accident did not happen in some dark walkway in the store where the shopper found it necessary to go. It occurred in broad daylight, and there is no pretense that there was anything to prevent any shopper from seeing and knowing precisely what the conditions were.

"Not every accident that occurs gives rise to a cause of action upon which the party injured may recover damages from some one. Thousands of accidents occur every day for which no one is liable in damages, and often no one is to blame, not even the ones who are injured. The character or extent of an injury has no bearing upon the question of the liability therefor; neither has the wealth nor the poverty of either party to such a litigation anything to do with the question of liability for the accident."

Counsel for plaintiff nevertheless contend that the facts of this case may not be successfully distinguished from those appearing in Ransom v. Kreeger Store, La.App., 158 So. 600, and Cavicchi v. Gaiety Amusement Co., La.App., 173 So. 458.

We cannot agree with counsel. The Ransom case bears no real resemblance to this matter. There, a scrub woman employed by the defendant was negligent in permitting water to be left on the floor inside of the store. The negligence of the defendant in that respect was practically conceded and the debated question was whether the plaintiff was guilty of contributory negligence in not observing the water on the floor. That question was resolved in plaintiff's favor because it was found that her attention was attracted to the merchandise which the defendant had on display on either side of the aisle in which she was walking and that she had no reason to anticipate that the floor was not dry.

In the Cavicchi case, it appeared that a young child slipped and fell in a dark passageway leading to an open yard where the defendant amusement company had provided a toilet for its male patrons. It was shown that the rain was blowing into the passageway from the open yard at the time the child entered it thereby making it

unsafe for the patrons who were obliged to use it in going to the lavatory. It will thus be seen that the situation appearing in that case is plainly different from the one in the instant matter because the passageway was unlighted and dark and, under those circumstances, it could be said that the defendant should have anticipated that anyone using it would be subjected to danger.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.